## **DECLARATION OF HUBERT L. BRANNON, JR.**

Hubert L. Brannon, pursuant to 28 U.S.C. § 1746, and subject to the penalties of perjury declares as follows:

1. My name is Hubert L. Brannon, Jr. I am more than twenty-one years of age, competent to testify, have no legal or mental disability and have personal knowledge of the facts stated herein. I freely give this declaration for use in this case. This declaration was executed in the state of Georgia, where I am currently located.

2. I have worked in law enforcement for over thirty years. I am currently an investigator with the Georgia Department of Drivers Services. Prior to my current position, I was with the Fulton County Solicitor's Office as an investigator (3) and Fulton County Sheriff's Office as a Sergeant. Prior to that, I served as a Lieutenant with the DeKalb County Police Department from approximately 2019 to 2021, and as a Sergeant from approximately 2009 until I was promoted to Lieutenant in 2019.

3. While a Sergeant with the DeKalb PD, I supervised undercover operations with the Dekalb County Vice Unit, which was also part of the FBI's Metro Atlanta Child Exploitation ("MATCH") Task force. In that role, I worked in coordination with the FBI and was issued FBI task force credentials.

4. The Vice Unit was responsible for investigating vice crimes (e.g., drugs, prostitution, human trafficking) in Dekalb County and throughout the metro Atlanta area. I worked on one hundred investigations or more relating to vice crimes, including drugs, prostitution, and human trafficking. I supervised undercover operations as part of my responsibilities as a Vice Unit officer.

5. Over the course of my career with the Vice Unit, I participated in trainings regarding sex crimes, including sex trafficking, as well as intelligence gathering, and also learned these skills on the job. Based on my experience and training as a Vice Unit officer, I have been qualified as an expert in court proceeding regarding the field of human trafficking.

6. In my experience as a Vice Unit officer, sex trafficking commonly occurs in hotels. Law enforcement relies heavily on hotel owners to monitor their own properties and pay attention to what is occurring on site. Hotel staff have firsthand access to areas and situations that police officers do not, including more opportunities to observe guests who may appear young or vulnerable and enter rooms during routine cleaning and maintenance.

7. I am familiar with the Masters Inn located at 1435 Montreal Road in Tucker, Georgia. During my time with the Vice Unit, I responded to calls and complaints of criminal activity and conducted undercover investigations at the

Masters Inn. In my experience, commercial sex activity was common at Masters Inn and a problem for law enforcement.

8. Most of the commercial sex activity was inside and further away from the Masters Inn office. In my experience, this is a typical practice for hotels who are aware of commercial sex activity but try to keep such activity in an area that is less likely to be observed. This location also provides a better lookout than other areas of the hotel.

9. Based on what I observed at the Masters Inn, the signs of commercial sex crimes (like prostitution and sex trafficking) were common and obvious to Masters Inn staff. To my knowledge, the hotel did nothing to stop or prevent these sex crimes.

10. Women who were being sold for sex informed me that hotel staff warned or tipped off the pimps (traffickers) when law enforcement were at or approaching the Masters Inn.

11. I also personally observed activity at the hotel demonstrating that people were being warned or tipped off when police were present. During undercover operations, members of my team would park nearby or in the parking lot in an unmarked vehicle. While inside the unmarked vehicle I observed people moving about the hotel with open curtains or visible on balconies. But as soon as myself or other officers in uniform exited the vehicles, I would observe signs

of people scattering like they were tipped off. I observed people close curtains, people on balconies go inside, or otherwise conceal themselves inside the hotel.

12. After securing the rooms and any persons during an operation, I would speak with hotel staff. Typically, the staff were not immediately forthcoming about the commercial sex activity on the property. I would inform hotel staff to call me if they saw signs of sex trafficking or observed young looking women who were being sold for sex. To my recollection I never received a call about such activity from anyone at the Masters Inn.

13. On one occasion, I interviewed a women suspected of prostitution at the Masters Inn. Following MATCH protocol, I asked questions including whether any hotel employees were involved in the commercial sex activity. One of the suspected prostitutes confirmed that hotel staff had slept with a prostitute on at least one occasion.

14. Based upon my investigation, observations, training, and experience as a police officer and with the Masters Inn, I concluded that employees at the hotel were warning pimps when the cops were at the hotel.

15. Over the course of many years responding to calls and supervising undercover operations at the Masters Inn, I personally observed at least two minors who were being sold for sex at the Masters Inn.

16. I have read this Declaration consisting of 16 numbered paragraphs and I declare under penalty of perjury that it is true and correct.

Executed on February 6, 2026.

*Signed by:*
*Hubert L. Brannon*
7BA5694A7BB141E...

Hubert L. Brannon

5